Case number 5, which is 213093 USA v. Michael Dickerson. And Mr. Hillis. Hello, Mr. Hillis. Hello, Judge Romer. How are you? I'm good. Thank you. And how are you? I'm fine. Thank you. Nice to see all of you today. Good morning. My name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Mr. Dickerson on this appeal. He's challenging the sentence. And although the district court correctly calculated the guideline range as being 51 to 63 months in prison, the district court erred by imposing a significantly above guideline sentence of 84 months. In particular, the district court committed procedural and substantive errors. I'll begin with the procedural errors. And to start, the district court erred by making inferences that were too speculative to show that my client knew his passenger was armed and that he would then ultimately use the gun to confront an individual they were both searching for. We don't contest that they were in the car together, that they drove there jointly, and that they saw this individual. But there's nothing that was offered by way of evidence from the government to show that my client knew that the passenger who had exited the vehicle had a weapon, much less that he intended to use it. That's significant under both the guidelines and ultimately, this was not a guideline determination because the district court rejected the government's various theories. What's the scope of that mental state that you're just describing? Did Dickerson need to know his accomplice had a gun to be accountable? Did he need to intend for his accomplice to pull the gun? Or is it enough if he planned to threaten someone even if he wasn't sure that he would use the gun? What's the scope? To the first part, there has to be knowledge that he had the gun. That would be consistent with Rosemont. And so if he doesn't know that he has the gun, then it wouldn't be foreseeable that he would know that he would use the weapon. So the two things are very much related, but the government can't get past the knowledge hurdle. And ultimately, the district court stacked inference upon inference to say if the two individuals are together, one exits the vehicle, the other continues to drive the car, they cost the individual, and therefore this all shows that he knew, in quote, exactly what was going to happen that day. I think that's a problem because that is stacking inference upon inference and becomes too attenuated from the conclusion that ultimately the district court wants to reach here. I think the district court was in some regard taken by surprise. The government was unable to show what it needed to to prevail on the guideline enhancement. And so ultimately, it seems to come out in the wash. The sentence comes in at 84 months as a sort of backwards looking justification series of factual conclusions to show why that this should be the punishment that's ultimately given to my client despite the government's failure to be able to prove the guideline enhancement. So we think that the foreseeability problem is ultimately a huge hurdle for the government, and it is then undermining the because- But if the four, let's look at it like this. If the four level enhancement for possessing a firearm in connection with another felony didn't by its terms apply, but it was clear to Judge Darrow that there was a plan to commit another offense, indeed a violent offense, then wouldn't that by itself support an upward variance from the guidelines range? If there were facts to support that, but the leap is the problem, Judge Rodner. And so where the district court says that my client knew exactly what was going to happen, pages 76, 77 of the transcript, facts don't show that. The facts only show that the two individuals were in the car together, drove together, stopped, and accosted the individual. But keep in mind, my client did de-escalate the situation upon the encounter to tell the person who, the erstwhile passenger, this is the wrong guy. There's nothing- Right. Indeed. They're looking for someone in particular together. Sure. Very true. And obviously they were prepared for violence in that car, weren't they? I don't know that you can make that conclusion. So the passenger who gets out of the car with a gun, you could say that in his encounter with the individual, but that brings us back to the Rosemont problem, Judge Rodner. Did my client know and what is the evidence to show that he knew that that person was both armed and had a plan to then pull the weapon? That's missing here. The government points to nothing that's brief. There are no conclusions by the district court to show knowledge on that important thing. And so how do you address the other things in the car? The sickle, I think, is easy. It has no bearing here. I don't know why it was ever mentioned. The vest is not anything that my client is wearing. We don't know who brought it in or put it in the car. And so much for the rest of the contents, Judge. We don't ask people typically when they're getting into a person's car, what do you have on you and what do you intend to do today? Wait a minute. Can we go back to the sickle? Yes. Why it doesn't have any bearing. A sickle? Right. Do people drive around with sickles? Are they farmers? Well, it is a farming community. I know that I have oftentimes landscaping tools in my car and sorted hodgepodge of junk for my kids. I couldn't tell you what's in my vehicle at any given moment. And when a passenger enters the vehicle, if the passenger brings in a sickle, a gun, and you don't know it, I don't think that you can be held accountable for the person's possession of the item or its ultimate use, Judge Wildner. And that's the important thing again here. So yes, the items were in the car. But the government, it was incumbent on the government to how do they get there and what the purpose was, and then what my client's knowledge was. If we have an agreement, if we have something to connect the two individuals to say that they intended to use a weapon, that they intended to cost the individual, that firearm would be pulled out, then I think the government's in a very strong position here. The conclusions by the district court would be sound. But that is ultimately what's missing here. We go from A to C. We need all the B portion to be filled in and it wasn't. So the government should have done that. It didn't. If I can move briefly then to what I think is an additional problem in this course separate from the procedural issue, although I do want to round out the procedural part by mentioning, if you're going to give an above-book guideline sentence, procedurally, you're supposed to consider the need to avoid unwarranted sentencing disparities. And the Sixth Circuit case law talks about this. This is the Warren decision that we cited in our brief. And the district court never does consider that. And that's an important consideration, what's an above-guideline sentence. The government talks about within-guideline cases, it appears. But 3553A6 requires specific consideration when you give a significantly above-guideline range sentence, as occurred here. So that is an additional procedural... But wasn't she focusing on the patterns of the offenses he was committing, committing them all on parole from prior offenses, the apparent lack of impact that the prior sentences had had on his behavior? Wasn't she implicitly explaining why giving him a longer sentence would not result in unwarranted disparity? I think if we're to accept that, Judge, that we then read out the necessity for consideration of 3553A6. And so under Warren, it says that you should specifically consider this. And I think that that is appropriate to do here in this case as well, because we're having, again, the above-guideline sentence. So there needs to be a more robust reasoning and a statement of the judge's facts to support the conclusion. So I think that that is a problem. But it does lead nicely into the substantive unreasonableness problem here, Judge, because if we were to accept that there is a criminal history here, a criminal history Category 6 that causes some concern to the district court, the fact is that that does not show that the person is more at risk of recidivism than any other person who is a felon in possession of a firearm in criminal history Category 6, because the rate of recidivism, according to the Sentencing Guideline Commission, is north of 85%. So that factor does not bear scrutiny. Then there is the problem about the district court saying, this is a very serious offense because you're a felon. Well, it's in built when you're a 922G1, convicted of 922G1 offense, that you have to be a felon, because there's not the prohibition that allows for the federal prosecution. So that is also a problem. And then ultimately, circling back to the deterrence issue, relying on a characteristic that is common to all defendants isn't a valid basis for an upward variance. So the seriousness, the risk of recidivism are a problem that the district court relies on those things as it does. But the deterrence in particular, a guideline sentence represents what the appropriate sentence is supposed to be in the minds of the commission that would afford adequate deterrence. So to say that this is also needed, this 84 month sentence, this above guideline sentence, as a means of deterrence, that's contrary to what the commission has concluded. The judge in her discretion could give a higher sentence, but the judge must justify with reasons on the record to show why these additional things, in her view, support the higher sentence, and they are not a mine run case. Here she points to only factors that are mine run considerations, and therefore it is, of course, like the Everest of a criminal sentence challenge in the Seventh Circuit, to try to show that a sentence is substantively unreasonable. There's only one set of climbers that can ever mount that challenge, that's the government. It's only if the sentence is too low, it's substantively unreasonable. When we come in and we want to talk about the sentence being substantively unreasonable because it's too high, we have a great case for us, because the same case applies. If you overemphasize a factor or certain factors that don't bear the weight that the district court gives them, then that's a substantively unreasonable sentence, and that's the case here, and Warren supports this as well from the Sixth Circuit. With that, I yield. Thank you. Thank you. Thank you. Okay. Hi, Mr. Simpson. How are you? Good morning, Barley. Your Honors, may it please the court, I'm Scott Simpson on behalf of the United States here. There are two phrases that I think are really the enemies of the defendant's inference. On the substantive challenge, that phrase is no abuse of discretion. I heard defense counsel admit, acknowledge that the district court can exceed, can vary above the guidelines in her discretion. I don't think we've mentioned yet that test here on that substantive challenge is abuse of discretion. The district court here made essentially two inferences, and we argue that they are reasonable inferences. Number one, Chief Judge Darrow inferred that Mr. Dickerson knew his passenger had a gun, and number two, she inferred that they were working in concert to find someone. I actually don't think Chief Judge Darrow inferred that Mr. Dickerson knew that the passenger would pull a gun, but in any case, those inferences that the district court made were more than reasonable. There are several facts that support those inferences. Mr. Simpson, why was the accomplice never charged? Your Honor, as far as I know, the accomplice was not found. What happened, according to the witnesses, was that Mr. Dickerson and his accomplice left where the victims were. They pulled around the corner of the house where the car was stopped, where the officer stopped. The car was just around the corner, and at some point after the car pulled into that driveway, and between that point and when the officer pulled up behind Mr. Dickerson's car, the passenger left from the car, and the witnesses said that the gunman then ran across the backyards and ran back through the front yard of the house where the encounter had occurred. And were the police ever able to figure out who the intended victim was? No, as far as I know, Your Honor, they were not. Just to summarize some of the facts that we believe support the district court's inferences here, Mr. Dickerson was slowly driving his car along the road in tandem with his passenger. They were obviously working together. They both increased their speed as they approached the victims. Mr. Dickerson, I don't think this has the victim's car as Dickerson's accomplice pulled out his gun. Obviously, as Judge Rovner said earlier, they were prepared for violence. They were looking for someone, and as the district court found, Mr. Dickerson knew that his... How are those facts, how do they lead to an inference that he knew his accomplice had a gun as opposed to he knew he and his accomplice were trying to find somebody, and for all he knew, the accomplice was going to threaten somebody with the sickle? Your Honor, he didn't. Mr. Dickerson, there was no indication from the witnesses that Mr. Dickerson indicated any surprise that a gun had appeared. He didn't say anything like, what's going on with this gun? And then after the encounter, he let the passenger get back in the escape from the scene. Also, you have the fact that Mr. Dickerson was later found with a gun under his own seat. So either that was the same gun that his passenger had used, which is a possibility. They were both described as being dark in color, or Mr. Dickerson had a gun to back up the passenger's encounter with the victims. So obviously, he was, as Judge Rovner said, prepared for violence. Mr. Dickerson was at least backing up his passenger's aggravated assault of the victims. And so was Dickerson ever charged in state court with aggravated assault? Or aiding and abetting aggravated assault? Your Honor, I'm afraid I don't know the answer to that question. I could find out and advise the court, but I don't know the answer to that question. As far as I know, he was not, but I'm not sure. And finally, besides the gun in the car that was found under Mr. Dickerson's driver's seat, we have the sickle and the bulletproof vest. The standard of review here, as I've said, is the enemy of the defense. On a procedural challenge, this court reviews the district court's factual findings only for clear error. The task on appeal, then, is to determine whether there is any evidence in the record to support the district court's findings. And in this case, the district court's factual inferences were more than reasonable. So if I could turn to the substantive challenge as well. There, of course, we're looking at abuse of discretion. The district court sentence here we submit was anything but an abuse of discretion. The district court reviewed at length, amply justified the sentence here. Among other things, Mr. Dickerson had 16 criminal history points. Of course, three more than he needed to reach the highest criminal history category. His criminal history showed a tendency, not just a certain number of, not just 16 points, but a tendency toward violent offenses, including aggravated assault, aggravated assault of a police officer, domestic battery, residential burglary, unlawful restraint. And that tendency toward violence was not necessarily captured by the mere number of criminal history points. And of course, the final guideline range, if you look at the PSR, the final guideline range only reflected the fact that he possessed a firearm as a felon. It did not reflect the aggravating circumstances of this offense, which we've already referred to. The two firearms in the car, that is the handgun, the nine millimeter, along with the rifle that was also in the back seat. And he had a loaded handgun for the, I'm sorry, a loaded magazine for the handgun in his pocket. Again, obviously, he was prepared to engage in violence, to engage in this assault. He possessed the firearms and ammunition in supporting his passenger in committing this aggravated assault. The victims of the assault were innocent bystanders. They were just strangers on the street. And as the district court said, they were put in serious harms way. And if not for a quirk in Illinois law, under which the aggravated assault was just a misdemeanor, that guidelines offense level enhancement would have been, would have applied making Dickerson's advisory range 77 to 96 months instead of the 51 to 64 months, 51 to 63 months that it actually was. And the sentence of 84 months that chief judge Darrow imposed would have been in the middle of that range. One final point, your honors, if I could, Mr. Hillis has referred to an argument that chief judge Darrow was basing this sentence simply on his status as a felon. That is incorrect. She started toward the beginning of her discussion of her reasoning for the sentence, she started by referring to the felon in possession offense. She said, here, as you might guess, I'm about to say, I think this is pretty serious because your status as a felon, as you know, prohibits you from possessing a firearm because Congress has decided that that's a public safety concern. And she went on, and you kind of proved them right because of the events that circumstances of this event, the things that we've already referred to. And then she ended again that discussion by saying, so this is pretty, this is very serious. She said, so your honors, for all these reasons, we urge the court to affirm the judgment of the district court. Thank you. Thank you. Thank you, Mr. Simpson. All right. Where's Mr. Hillis? Mr. Hillis? Yeah, I was sitting at table hoping I'd hear you say I could have more time judge, but I'm going to consider this an invitation. Yes. Okay, great. Thank you. Can you do it in two minutes? I hope so. I will. So the government said that the district court did not punish my client because of his felon status, but page 77, that's like the first thing the judge is mouthing. This is serious because of your felon status. That is an inbuilt factor, of course, for the prosecution to make it a valid prosecution. So the government cannot distance itself from what the district court's words are that are in print at page 77. The government infers that Mr. Dickerson came to possess the magazine for the firearm apparently before the encounter and then left with it after the encounter. We don't know when Mr. Dickerson came to possess that magazine. It may have been that he scrambled to get the items that kind of looked like he did based on the transcript and what was reported about him getting out of the vehicle when the police arrived. He could have been picking up that magazine once the police encountered him and he never touched it before that. The government should not speculate about the second weapon being a backup. We have no idea where that weapon, how that came to be in the car or its purpose. It's pure speculation by the government. The district court didn't make that any knowledge by my client that he had about this other firearm, any firearms that were held by the passenger. And allowing the passenger to get back in the car, that's normal. Even if you're surprised by something. I don't think that you typically stop somebody and say you can't get back in my car. So I don't think that that helps and the district court didn't make that conclusion either. Switching a little bit to procedural error questions, those are reviewed de novo. That's what the government said in its brief. And the failure to consider 3553A6 is a procedural error. And if the government says the district court didn't talk about what my client knew, page 77 the district court said my client knew exactly what was going to happen and he didn't. They have to pile inferences under Summers and Shaheen that's incorrect. Rosemond requires knowledge. And this ultimately is an abuse of discretion because as in Warren, where the Sixth Circuit was able to find there's an abuse of discretion when you attach undue significance to things that are inbuilt like criminal history, risk of recidivism, and the fact that you are a felon. That's an abuse of discretion. That's a substantively unreasonable sentence. So either under procedural errors, which we reviewed de novo, or substantively unreasonable sentence, my client deserves to have his sentence vacated and be remanded for a resentencing hearing. Thank you. Thank you. Thanks to both of you. Have a good trip home. All right.